Gordon GRAY, Jr., Plaintiff,

v.

PERMANENT MISSION OF the PEO-
PLE'S REPUBLIC OF the CONGO TO
the UNITED NATIONS, Renewal Real-
ty Corp. and Richard Ross, Defendants.

No. 77 Civ. 3670 (CHT).

United States District Court,
S. D. New York.

Jan. 18, 1978.

Leon Brickman, Brooklyn, N. Y., for plaintiff.

Mark J. O'Connor, Williamsville, N. Y., for defendant Congo Mission.

### MEMORANDUM

TENNEY, District Judge.

In this action removed from the New York State Supreme Court, plaintiff Gordon Gray, Jr. moves to remand this action to the state court. Defendant Permanent Mission of the People's Republic of the Congo to the United Nations ("Congo Mission") cross-moves to dismiss the action for want of jurisdiction based on its sovereign immunity under the recently enacted Foreign Sovereign Immunities Act of 1976 ("Immunities Act"), 28 U.S.C. §§ 1602–11, and for want of personal jurisdiction based on the plaintiff's failure to serve the summons and complaint according to the requirements of the Act. For the reasons stated below, the motion to remand is denied and the motion to dismiss for lack of personal jurisdiction is granted.

The Congo Mission is the representative of the government of the People's Republic of the Congo to the United Nations. On February 26, 1975, it purchased from Richard Ross[1] a five-story structure located at 14 East 65th Street, New York City, to house its permanent mission to the United Nations. The purchase price of the property seems to have been in excess of $400,000. Affidavit of Mark J. O'Connor, sworn to August 12, 1977, Exh. B ("O'Connor Affidavit"). In 1971 plaintiff Gray had purchased this property from Alvin Gallant, giving Gallant a purchase money note and a mortgage in the amount of $500,000 at that time. Affidavit of Leon Brickman, sworn to August 4, 1977, ¶ 3 ("Brickman Affidavit"). In May 1974 Gray conveyed the property, subject to the mortgage, to Richard Ross. Affidavit of Helen T. Ives, sworn to August 4, 1977, ¶ 5 ("Ives Affidavit"). The conveyance to the Congo Mission in February 1975 was likewise subject to the existing mortgage. *Id.* ¶ 5.

These transactions seem to have proceeded uneventfully until the summer of 1976. The Congo Mission states that it paid over $300,000 to Ross in connection with the sale, thereby discharging second and third mortgages held by Ross. O'Connor Affidavit ¶ 4. A portion of these payments to Ross was conveyed to Gallant as payments on the first mortgage held by Gallant; such payments were made at least through May 1976. *Id.* ¶ 6 & Exh. B. Following discharge of the second and third mortgages, however, Ross appears to have stopped conveying these first mortgage payments to Gallant. *Id.* ¶ 6.

The interest and principal installment due on July 6, 1976 was not paid to Gallant. Ives Affidavit ¶ 7. Gallant's attorney conveyed this information to Helen Ives, an attorney who had represented Gray at the

---

1. Richard Ross and "Renewal Realty Corp.," both named as defendants in this action, have not appeared on these motions, and the Court has found no reference to their appearance in the state court. They did not join in the removal petition. The Court, having examined the original complaint, is at a loss to explain what part these two defendants play in the action. Since the action as against them would not be independently removable, there being no diversity or other ground of federal subject-matter jurisdiction, insofar as defendants Ross and Renewal Realty may be found to have participated in the removal of this action, the case as to them is remanded to the state court.

time of the 1971 purchase and who apparently continued to represent him, *id.* ¶¶ 3, 7 & Exh. A, and Ms. Ives advised the Congo Mission of their default. On August 4, 1976, the payment still was not made, Gallant exercised his option under the note and mortgage and declared the entire sum due, with interest. *Id.* ¶ 12 & Exh. B. He commenced an action in New York State Supreme Court on September 10, 1976 against Gray, the maker of the note. Brickman Affidavit ¶ 6 & Exh. A. On December 10, 1976, Justice Helman granted Gallant's cross-motion for summary judgment, finding that Gallant was not required to institute a foreclosure action prior to suing the maker of the note. *Gallant v. Gray,* Index No. 17452/76 (N.Y.Sup.Ct. Dec. 10, 1976). By checks dated January 3 and 5, 1977, Gray paid Gallant a total of $369,687.50 and took an assignment of the note and mortgage. Brickman Affidavit ¶ 7 & Exh. C.

The current action by Gray against the Congo Mission was commenced by the service of a summons and complaint on "defendant's secretary" on January 25, 1977. *Id.* ¶ 8. This individual is not further identified in the papers submitted by the plaintiff, and the Court has not been provided with a copy of the affidavit of service, although copies of the summons and complaint have been supplied. *Id.* Exh. D. The state court referred the matter to a referee for computation. *Id.* ¶ 9 & Exh. E. No answer was served by the defendant, and the court granted a judgment of foreclosure and sale on April 13, 1977; this judgment was entered on May 2, 1977. *Id.* The plaintiff states that a "copy of this judgment with notice of entry was served on the defendant on May 5, 1977." *Id.* ¶ 9. Again, no copy of an affidavit of service has been submitted to this Court, nor is the method of service set forth in the plaintiff's papers.

The plaintiff instituted a foreclosure search, which revealed the existence of tax arrears of approximately $50,000. The plaintiff, notwithstanding the fact that he had commenced a foreclosure action against the Congo Mission, requested their cooperation in having these taxes cancelled. The defendant complied, and on May 4, 1977, only two days after the default judgment was entered against the defendant, the taxes were cancelled. *Id.* ¶¶ 11–12 & Exh. H.

Gray then took steps to have the Congo Mission removed from the premises, sending a letter requesting that they vacate in advance of the foreclosure sale scheduled for June 27, 1977. A copy of the return receipt is provided. *Id.* Exh. K. The foreclosure sale was held, and Gray, being the highest bidder, received a deed to the property on July 1, 1977, sending a copy to the defendant on July 5. *Id.* ¶¶ 14–17. The Congo Mission not having vacated the premises, Gray moved pursuant to N.Y.R.P. A.P.L. § 221 for a writ of assistance and an adjudication of contempt. Brickman Affidavit ¶ 18.

There is no indication that the Congo Mission had any legal representation in this matter up to July;[2] the Ambassador has stated that the Congo Mission was without legal representation in this matter until July 22, 1977. Statement of Nicolas Mondjo, dated August 5, 1977.[3] Ives, notwithstanding the fact that she was representing the interests of Gray in this matter, takes exception to the statement by the Congo Mission's attorney that the defendant was not aware of its legal rights, stating that

[f]rom July, 1976 through June 24, 1977, on more than 30 different occasions, in writing, in person and over the telephone, I spelled out to the defendant's Ambassador and his various representatives, the rights, duties and obligations of the defendant.

---

2. The plaintiff's attorney has stated that "an attorney by the name of MAX STEINBERG telephoned me on June 21, 1977 in behalf of the defendant and asked that I delay the sale scheduled for June 27, 1977." Brickman Affidavit ¶ 22. No further mention is made of this individual, and the defendant denies that Stein-

berg was ever retained to call the plaintiff's attorney. O'Connor Affidavit ¶ 16.

3. This Statement, while labelled an "Opposing Affidavit," is not notarized, although the Ambassador's signature was guaranteed by the Chase Manhattan Bank.

Ives Affidavit ¶ 22. This advice seems to have consisted of a description of the court proceedings instituted by Gray and warnings that the defendant must either pay the amounts demanded by the plaintiff, vacate the premises or be evicted. *Id.* ¶¶ 14–20 & Exhs. D–G.

Defendant's current attorney was retained July 22, 1977. O'Connor Affidavit ¶ 4. He appeared on behalf of the Congo Mission in state court on July 25, the return date of the motion for a writ of assistance, and obtained an adjournment until August 3, 1977. Brickman Affidavit ¶ 26. On July 29, 1977 he filed a removal petition pursuant to 28 U.S.C. § 1441(d), and the removed case was assigned to this Court.

### Discussion

On August 8, 1977, Gray filed a notice of motion to remand the case to the state court contending that the state court action had already proceeded to judgment and that the motion for a writ of assistance was a nonremovable ancillary proceeding. The Congo Mission opposed this motion and filed a further motion seeking the dismissal of the action for lack of subject-matter jurisdiction and lack of personal jurisdiction due to insufficiency of service of process. After consideration of the papers submitted and the applicable law, the Court concludes that the action was properly removed and therefore denies the motion to remand. The Court also concludes that the plaintiff failed to comply with the clear requirements of the Foreign Sovereign Immunities Act of 1976 in its service of process. Accordingly, the default judgment is vacated and the action against the Congo Mission is dismissed.

### Removal

■ The Foreign Sovereign Immunities Act of 1976 was passed primarily to provide a unitary rule for determinations of sovereign immunity in American courts. *Martropico Compania Naviera S.A. v. Pertamina,* 428 F.Supp. 1035, 1037 (S.D.N.Y.1977). While Congress left open the option to bring actions against foreign states in the state courts, it clearly intended to encourage the bringing of such actions in federal courts. *Id.* Thus, the Immunities Act contained both a new grant of federal court jurisdiction, 28 U.S.C. § 1330, and an addition to the removal statute: "any civil action brought in a State court against a foreign state . . . may be removed by the foreign state" to the local district court. *Id.* § 1441(d). There can be no doubt that the Congo Mission is a foreign state within the meaning of 28 U.S.C. § 1603(a). Plaintiff contends, however, that the proceeding was not removable since the action, seven months old, had proceeded to judgment and consisted at the time of removal solely of plaintiff's ancillary motion to evict the defendant. It is true that the Immunities Act incorporates the time limits for removal of 28 U.S.C. § 1446(b). The Act grants an exception, however, allowing enlargement of this time limit "at any time for cause shown." *Id.* § 1441(d). Such cause has been demonstrated here.

The Immunities Act was in effect prior to January 25, 1977, the date on which the plaintiff attempted to serve his summons and complaint on the Congo Mission. *See Martropico, supra,* 428 F.Supp. at 1037; Immunities Act § 8, Pub.L.No.94–583, 90 Stat. 2891 (1976). Thus, the plaintiff was mandated to make service according to one of the alternatives stated in 28 U.S.C. § 1608(a):

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a

notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or

(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services— and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

As used in this subsection, a "notice of suit" shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation. The Congo Mission contends, and the plaintiff does not dispute, that no special arrangement or international convention within the purview of subsections (1) and (2) of this section exists. Defendant's Memorandum in Support of Motion to Dismiss 3. Thus, service of the summons and complaint could only have been achieved through either subsection (3) or (4), neither of which was satisfied here.

■ The plaintiff contends, however, that the Congo Mission is not a "foreign state" as that term is used in section 1608 but is an "agency or instrumentality of a foreign state," service upon which is governed by section 1608(b).[4] This argument is without merit. Indeed, it is hard to imagine a purer embodiment of a foreign state than that state's permanent mission to the United Nations. In the document announcing the retention of the Congo Mission's current counsel, Ambassador Mondjo identifies himself as "the Representative of the People's Republic of Congo," and authorizes the attorney to represent the People's Republic in all legal matters including the present action. Furthermore, the legislative history of the Immunities Act directly supports this conclusion. In discussing 28 U.S.C. § 1610, which governs exceptions to a foreign state's immunity from attachment or execution, the House Report states that "such buildings [including diplomatic and consular missions] are those of the foreign state itself." H.R.Rep.No.94–1487, 94th Cong., 2d Sess. 15, *reprinted in* [1976] *U.S. Code Cong. & Admin. News* pp. 6604, 6628 ("House Report"). Thus, the Congo Mission would seem to be simply that aspect of the foreign state which relates to the United Nations.

The plaintiff's failure to comply with the explicit service requirements of the statute meant that the Congo Mission did not receive the requisite notice of the action against it. This failure, when taken together with advice being transmitted by the plaintiff's counsel, resulted in the Congo Mission not taking steps to ascertain its legal remedies until the retention of its current counsel on July 22, some six months after the action was "commenced." Certainly that counsel moved quickly to secure the rights of his client, removing this case within one week of his employment.

The defendant argues that the Congo Mission had a clear understanding of the legal situation and was given ample notice

---

4. The plaintiff contends that section 1608(b) was complied with in this case. Although the Court concludes that this section is not applicable, it also concludes that it was not complied with here. Certainly the plaintiff cannot claim to have followed subsections (1) or (3) of section 1608(b). Subsection (2) allows in-hand service of a summons and complaint on "an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States." The plaintiff has stated only that service was made on "defendant's secretary." This person is not identified more specifically and would not appear to have the degree of authority contemplated by the statute.

of the action against it. Whether this be true or not, informal notification through channels clearly outside the obvious requirements of the applicable statute cannot be substituted for those which meet the requirements. Furthermore, violence has been done to the congressional concern for the difficulties inherent in cross-cultural and cross-lingual litigation which is apparent on the face of the service provisions of the Immunities Act. Every mode of service prescribed by the statute assumes either prior agreement between a foreign state and the American authorities—28 U.S.C. § 1608(a)(1)–(2)—or mandates strict attention to the linguistic and diplomatic problems inherent in such situations. Thus, subsections (3) and (4) specify that the summons and complaint must be translated into the official language of the foreign state— in this case French—and transmitted either by mail requiring a signed receipt to "the head of the ministry of foreign affairs of the foreign state concerned" (subsection (3)) or through diplomatic channels directly to the foreign state (subsection (4)). Notice here was in English, however, and merely delivered to the "defendant's secretary." The summons and complaint were drawn up on a preprinted legal form, never the simplest document to understand, even for one trained in the law. It is obvious that the officials of the Congo Mission did not understand their rights under American law, for they did not employ attorneys nor take any other legal actions until threatened with impending eviction at the hands of the "sheriff of the County of New York." Brickman Affidavit Exh. O.

These circumstances indicate to this Court that there was "cause" for the Congo Mission not having removed the case within the strict time limits specified in the statute and that such removal is therefore proper.

Moreover, the fact that the case in the state court had proceeded to default judgment does not disturb this conclusion, for the reasons stated below in the discussion of the motion to dismiss. Finally, the Court considers the entire state-court case as to the Congo Mission to have been removed, not just that aspect in which the plaintiff had sought a writ of assistance in the state court. Thus, the Court need not consider the plaintiff's argument that a motion under N.Y.R.P.A.P.L. § 221 is a nonremovable ancillary proceeding.

### Dismissal

■ The Congo Mission has moved for a dismissal of this action against it for lack of subject-matter jurisdiction and lack of personal jurisdiction due to insufficient service of process. It is within this Court's power upon removal to examine the sufficiency of original service; if the Court finds that such service was not sufficient, it may dismiss the case. *Mechanical Appliance Co. v. Castleman*, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272 (1910); *Walker v. Savell*, 335 F.2d 536 (5th Cir. 1964). The existence of a default judgment entered by the state court prior to removal should not impede this inquiry; that judgment may be examined by the federal district court and vacated if sufficient grounds are presented. *Butner v. Neustadter*, 324 F.2d 783 (9th Cir. 1963); *Munsey v. Testworth Laboratories, Inc.*, 227 F.2d 902 (6th Cir. 1955) (per curiam).

■ In the instant case the Court has already concluded, in the context of its discussion of the propriety of removal, that the service of process in January 1977 did not conform to the requirements of 28 U.S.C. § 1608(a) and was therefore insufficient. Thus, the state court did not obtain jurisdiction over the Congo Mission[5] and all

---

5. There is no indication in the papers submitted to this Court that the Congo Mission "appeared" in the state court action except to request and receive one adjournment of the motion for a writ of assistance, although the default judgment entered on May 2, 1977 states that it was granted upon a

    showing that each and all of the defendants herein have been duly personally served

within this State with the summons in this action, or have voluntarily appeared therein by their respective Attorneys, and upon the affidavits of service on the defendants and the notices of appearance heretofore filed herein and proving that more than twenty days had elapsed since said defendants were so served and appeared as aforesaid . . . .

Brickman Affidavit Exh. E.

its actions, including the entry of the default judgment, were void.[6] *E. g., Veeck v. Commodity Enterprises, Inc.,* 487 F.2d 423 (9th Cir. 1973); 7 *Moore's Federal Practice* ¶ 60.25[2], at 307. Accordingly, the default judgment entered May 2, 1977 against the Congo Mission is vacated and the action against the Congo Mission is dismissed pursuant to Rules 12(b)(4) & (5) of the Federal Rules of Civil Procedure for insufficiency of process and of service of process.

So ordered.

**6.** The plaintiff contends that the default judgment should not be vacated because the defendant has not demonstrated the three prerequisites for such an action—(1) excusable neglect, (2) a meritorious defense and (3) application within a reasonable time after learning of the default. Plaintiff's Supplemental Memorandum 5. Factors relevant to the first condition were discussed with respect to the presence of just "cause" for allowing an extension of the time for removal and need not be repeated here. As to the third factor, it should be noted that the Immunities Act requires that the foreign state be notified of the default according to the procedures established for the service of process. Since those procedures were not followed here, it cannot be said that the defendant had adequate notice of the default. Moreover, the defendant's counsel moved with credible speed once he had been retained; the Court does not consider the two-and-one-half month time lapse between entry of the default and retention of the attorney to have been unreasonable considering the special circumstances of this case.

Finally, even though the second ground—presence of a meritorious defense—is not relevant to the vacating of a default judgment which is void because of insufficiency of service of process, 7 *Moore's Federal Practice* ¶ 60.25[2], at 301, the Court finds considerable question as to the merits of this case. It must be noted that the Immunities Act does establish an exception to the general principle of sovereign immunity for a foreign state for cases "in which rights in . . . immovable property situated in the United States are in issue." 28 U.S.C. § 1605(a)(4). It would seem that an action for foreclosure and sale in the New York State Supreme Court is such an action. Even though the Court may have the power to establish rights in property, however, there is serious doubt in this Court's mind whether the Congo Mission could be forced to vacate the premises even as a result of an adjudication awarding ownership of that property to another party. Section 1610(a)(4), which applies only to property used for "commercial activity," contains a specific exemption from "execution" for property used "for purposes of maintaining a diplomatic . . . mission." *Id.* § 1610(a)(4)(B). Since the Immunities Act grants greater protection to noncommercial activity of foreign states, this exemption would seem to apply *a fortiori* to diplomatic missions which are not used for commercial activity. The legislative history supports this conclusion. The House Report, discussing the power of courts to adjudicate rights in immovable property used for diplomatic purposes in the context of the "Tate Letter" and the Vienna Convention, states that

[a]ctions short of attachment or execution seem to be permitted under the Convention, and a foreign state cannot deny to the local state the right to adjudicate questions of ownership, rent, servitudes, and similar matters, *as long as the foreign state's possession of the premises is not disturbed.*

H.R.Rep.No.94–1487, 94th Cong., 2d Sess. 20, *reprinted in* [1976] *U.S.Code Cong. & Admin. News* pp. 6604, 6619 (emphasis added). Thus, it is open to serious question whether an American court could order the eviction of a diplomatic mission from its premises. However, adjudication of this question must await the bringing of a proper action under the procedures set forth in the statute.