## IRVING TRUST COMPANY

v.

## The GOVERNMENT OF IRAN and Bank Omran.

### Civ. A. No. 80–130.

United States District Court, E. D. Louisiana.

Jan. 21, 1980.

---

Robert M. Steeg, of Steeg & O'Connor, New Orleans, La., for plaintiff.

No counsel for defendants as yet.

CHARLES SCHWARTZ, Jr., District Judge.

This is a non-jury civil suit brought pursuant to the Foreign Sovereign Immunities Act, by a New York corporation, Irving Trust Company, against The Government of Iran and an agency of that government, Bank Omran. Subject matter jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1330(a). *Martropico Compania Naviera S.A. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 428 F.Supp. 1035 (1977). Personal jurisdiction over the foreign entities is afforded by 28 U.S.C. § 1608. *Gray v. Permanent Mission of People's Republic of Congo to United Nations*, 443 F.Supp. 816 (S.D.N.Y.1978), aff'd 580 F.2d 1044 (2nd Cir. 1978).

Plaintiffs herein indicate that they will serve the Iranian government pursuant to § 1608, and request this Court to issue a writ of attachment against Iranian assets located in this jurisdiction, under the provision of 28 U.S.C. § 1610(d):

> (d) The property of a foreign state, as defined in section 1603(a) of this chapter, used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—
>
> > (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver,
> >
> > and
> >
> > (2) *the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.* (Emphasis added.)

The complaint alleges that the defendant, Bank Omran, is an agency or instrumentality of the Government of Iran, within the meaning of 28 U.S.C. § 1603(b) and therefore, is subject to suit under the Foreign Sovereign Immunities Act.

The Government of Iran expressly waived its right to sovereign immunity and submitted to the jurisdiction of the United States courts in the *Treaty of Amity, Economic Relations*, and *Consular Rights*, August 5, 1955, United States—Iran, Articles III and IV, 8 U.S.T. 899, T.I.A.S. 3853.

Plaintiff asserts three causes of action, each of which is based upon defaulted payment on seven promissory notes. The relevant facts are as follows:

Joseph Canizaro, a New Orleans Real Estate Developer, together with his successive corporations (hereinafter Canizaro) executed seven promissory notes, totaling two million dollars plus interest, in favor of the plaintiff, Irving Trust Company, during the years 1978–79. All of these notes matured

on December 31, 1979 with interest accrued thereon in the amount of $138,351.02. Further interest is presently accruing at a flexible rate tied to plaintiff's prime commercial interest rate. None of the notes have been paid by Canizaro despite plaintiff's amicable demand.

The full amount of the notes, including principal and interest, is secured by a letter of credit from the defendant, Bank Omran to plaintiff, Irving Trust Company, with the provision that in the event of default by Canizaro, plaintiff Irving Trust Company is authorized to debit, in the amount of the default, an account that Bank Omran maintains at Irving Trust Company. However, the letter of credit has not been honored and plaintiff is unable to debit this account.

This same letter of credit is secured to the Bank of Omran by a fourteen million dollar collateral mortgage on Canal Place I, a Canizaro real estate development located in downtown New Orleans.

Plaintiff seeks to be made whole on the letter of credit from the Bank of Omran, and/or The Government of Iran, its majority owner. Plaintiff seeks to exercise Bank Omran's rights against Canizaro under the collateral mortgage and collateral mortgage note to the extent of its claim as if it had been an original mortgagee.

Plaintiff's claims are now in excess of $2,138,351.02 which was due and payable on December 31, 1979. Yet, plaintiff seeks to have this Court attach defendant's interests in this state citing Canizaro and his interests as garnishees, and to hold said property subject to the further orders of this Court upon its furnishing a bond in the sum of $250.00 as is provided for in LSA R.S. LCCP Art. 3544. Plaintiff claims that the basis for the writ of attachment is Louisiana Civil Code Art. 3541(5), the non-resident writ of attachment.

Although as previously stated, the Court is of the opinion that it has jurisdiction pursuant to the Foreign Sovereign Immunities Act, it is further of the opinion that plaintiff is not entitled to the form of writ of attachment it seeks herein, for the reasons hereinafter set out.

Relief in the form of an attachment is a harsh remedy and runs contrary to the fundamental concept that a person's property should not be taken from him before he has been given an opportunity for the proper adjudication of his rights. Thus, statutes granting such relief should be strictly construed. *First National Bank and Trust Co. of Vicksburg v. Drexler*, 171 So. 151 (La. App. 2nd Cir. 1936). In particular it is necessary to determine if the Louisiana statute which plaintiff seeks to invoke is proper in the context of this case.

Louisiana practice recognizes two types of attachments:

1. Where the writ is merely incidental to a demand *in personam*.

2. Where the proceeding is *in rem*, operating only on the property seized. *Burgin Bros. & McCane v. Barker Baking Co.*, 152 La. 1075, 95 So. 227 (La.S.Ct.1922); Johnson, J., *Attachment and Sequestration*, 38 T.L.R. 1 (1963).

The Louisiana Code of Civil Procedure sets out specific grounds for attachment in Article 3541:

A writ of attachment may be obtained when the defendant:

(1) Has concealed himself to avoid service of citation;

(2) Has mortgaged, assigned, or disposed of his property or some part thereof, or is about to do any of these acts, with intent to defraud his creditors or give an unfair preference to one or more of them;

(3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors;

(4) Has left the state permanently, or is about to do so before a judgment can be obtained and executed against him; or

(5) Is a nonresident who has no duly appointed agent for service of process within the state.

Plaintiff urges that non-resident attachment allowed by section 5, *supra*, is incidental to this demand *in personam*. The Louisiana courts have held that the purpose of

subsection 5 is the method for acquiring jurisdiction *quasi in rem* which is authorized by Art. 9, LSA R.S. LCCP:

"A court which is otherwise competent under the laws of this state has jurisdiction to render a money judgment *against a nonresident not subject personally to the jurisdiction of the court* only if the action *is commenced by an attachment of his property* in this state. Unless the nonresident subjects himself personally to the jurisdiction of the court, the judgment may be executed only against the property attached." (Emphasis added.)

*Burgin Bros. & McCane v. Barker Baking Co., supra,* which interpreted Code of Practice Art. 240, predecessor to current Art. 3541; *Sewerage and Water Board of New Orleans v. The Cumulus,* 172 F.2d 102 (5th Cir. 1949).

*Burgin Bros., supra* was an early interpretation of the Louisiana Foreign Corporation Law (now, LSA R.S. 12:301, *et seq.*) which grants Louisiana courts *in personam* jurisdiction over foreign corporations who were authorized to do business and who had a registered agent for service of process in this state. As expressed by the Court, the intent of the statute was to confer upon corporations that comply with the requirements of the statute the authority to exercise the same powers, rights, and privileges of domestic corporations, and in return for compliance with Louisiana's laws

"the right and privilege . . . of being relieved of the harassment and inconvenience flowing from the attachment of its *property when full and adequate remedy to the suitor by action in personam is provided for.*" (Emphasis added.)

A brief look at the legislative history of the Foreign Sovereign Immunities Act reveals a strikingly similar legislative intent. The objective of granting *in personam* jurisdiction was to

"render unnecessary the practice of seizing and attaching the property of a foreign government for the purpose of obtaining jurisdiction." (1976) U.S.Code Cong. and Admin.News, p. 6604. See also, *Jet Line Services, Inc. v. M/V Marsa El Hariga,* 462 F.Supp. 1165 (D.Md.1978).

At the core of the *Burgin Bros.* opinion is the concept of voluntary submission to the laws of this state for the privilege of doing business here. We find that the Government of Iran submitted to the laws of the United States in exchange for the privilege of doing business in this country. *The Treaty of Amity, Economic Relations,* and *Consular Rights* Article III, paragraph 4, *supra,* provides:

"Nationals and companies of either High Contracting Party (the United States and Iran) shall have freedom of access to the courts of justice and administrative agencies within the territories of the other High Contracting Party, in all degrees of jurisdiction, both in defense and pursuit of their rights, to the end that prompt and impartial justice be done. Such access shall be allowed in any event, upon the terms no less favorable than those applicable to nationals and companies of such other High Contracting Party . . . . ."

In applying the rationale of the Louisiana Supreme Court in *Burgin Bros., supra* to the Foreign Sovereign Immunities Act, we hold that where a statutory method to obtain jurisdiction *in personam* is provided, and the statute does not expressly or implicitly retain the non-resident attachment as a remedy, the writ of non-resident attachment is foreclosed.

Therefore, since section 5, article 3541 relates to a provisional attachment for the purpose of acquiring jurisdiction over a non-resident, and since the Court, by virtue of the Foreign Sovereign Immunities Act, has jurisdiction over this defendant, plaintiffs cannot avail themselves of the provisions of section 5 to obtain the writ of attachment they seek herein.

However, plaintiffs are not barred, and nothing herein should be construed as preventing them from obtaining, attachment incidental to their demand, provided they can comply with the requirements of Louisiana law, and the Foreign Sovereign Immunities Act which entitle them to a provision-

al attachment for conservatory purposes. However, the complaint in its present form and the bond suggested do not warrant such relief.

For the foregoing reasons, the writ of attachment is hereby DENIED.