OPINION OF THE COURT
Lewis R. Friedman, J.
Respondent the Libyan Arab Republic Mission to the U. N. (the Mission) seeks vacatur of the default judgment of possession of the apartment it rented from petitioner. The motion presents issues under the Federal Foreign Sovereign Immunities Act of 1976 (90 US Stat 2891) which have not been treated in reported New York decisions.
The facts here are simple. The Mission rented an apartment in petitioner’s building in 1975 and has renewed its lease at each expiration. The most recent expiration date was June 30, 1983. The lease is on a standard form. All of the renewals are Rent Stabilization Association forms. The apartment has apparently been used by the Mission to house Libyan diplomats who are assigned to the Mission. Petitioner, no doubt familiar with Walter & Samuels v New York City Conciliation & Appeals Bd. (81 AD2d 212, app *946 dsmd 55 NY2d 824), which denied rent stabilization protection to the Syrian Mission, refused to renew the lease. Petitioner brought the instant proceeding under the authority of the Omnibus Housing Law of 1983 (L 1983, ch 403) for the court to determine the question of “primary residence”. The Mission defaulted. Respondent, when it learned of the default judgment, brought this motion alleging (1) improper service, (2) diplomatic immunity, and (3) that the proper forum was the Conciliation and Appeals Board (CAB).
I
SERVICES OF PROCESS
Petitioner commenced this proceeding by “conspicuous place” service under RPAPL 735. Petitioner was aware of the diplomatic status of its tenant and was, perhaps, motivated by haste in a desire to recover an apartment in a building soon to be converted into a co-operative. Petitioner chose to close its eyes to the status of the tenant and, apparently did not make any analysis of the Foreign Sovereign Immunities Act of 1976 (90 US Stat 2891 [FSIA]).
In that statute Congress, under the supremacy clause (see HR Report No. 94-1487, US Code Cong & Admin News, 1976, vol 5, pp 6604, 6610-6611 [House Report]), adopted a single, uniform set of rules for the service of papers on foreign States, and their entities, as well as for judicial decisions on the question of sovereign immunity. Accordingly, if the FSIA applies, service of process must be made in accordance with title 28 (§ 1608, subd [a]) of the Unites States Code which provides: “(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state” in certain specified ways (emphasis added). There is little doubt that the Mission is a “foreign state” within the meaning of the FSIA. (US Code, tit 28, § 1603, subd [a].) (See Gray v Permanent Mission of People’s Republic of Congo, 443 F Supp 816, 819.) It is further clear that the Mission is the foreign State, itself, rather than an “agency or instrumentality” of the State, subject to the less stringent service requirements of title 28 (§ 1608, subd [b]) of the United States Code. The Mission, as with the Congo Mission in Gray (supra, p 820), “would seem to be simply *947 that aspect of the foreign state which relates to the United Nations.” The legislative history of the FSIA supports that conclusion; the embassy and missions are excluded from the classes of entity to be covered by the definition of “agency or instrumentality” in title 28 (§ 1608, subd [b]) of the United States Code, and the embassy or mission buildings are described as “those of the foreign state itself”. (US Code Cong & Admin News, 1976, vol 5, pp 6628, 6613; see, also, 40 D 6262 Realty Corp. v United Arab Emirates Govt., 447 F Supp 710.) The service here clearly failed to follow the FSIA. The affidavit describes the conspicuous posting and mailing provided for in RPAPL 735. There are four authorized forms of service under the FSIA (US Code, tit 28, § 1608, subd [a]):
“(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
“(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
“(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned, or
“(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services — and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.
*948 “As used in this subsection, a ‘notice of suit’ shall mean a notice addressed to a foreign state and in a form prescribed by the Secretary of State by regulation.”
The court has not been directed to any arrangement under paragraph (1). Obviously the lease provision for the service of a “bill, statement, notice, or communication” is not an “arrangement” for the service of process.
The court is aware that the United States is a party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents (20 US Treaties & Other Int Agreements 361, TIAS 6638). Since the court has been advised by the State Department that Libya is not a party to that convention, paragraph (2) cannot be complied with. (US Code Cong & Admin News, 1976, vol 5, p 6623.)
The procedures of paragraph (3), service by the court by receipted mail to the head of the foreign ministry, or of paragraph (4), service through diplomatic channels, both require translations of the documents into the official language of the Mission, here Arabic. Congressional concern for possible misunderstandings with the foreign State (see Gray v Permanent Mission of People’s Republic of Congo, supra, at p 821) applies even here where Libya could be described as an unfriendly State. Indeed, in such a situation it is all the more important that there be no misunderstandings.
The Federal courts in New York have correctly held that service such as attempted here is defective. (See 40 D 6262 Realty Corp. v United Arab Emirates Govt., supra, at p .712.) The posting is obviously inadequate and the mailing even if, as appears unlikely from the documents submitted, there was a proper mailing to the Mission itself. As the House Report notes (US Code Cong & Admin News, 1976, vol 5, p 6625): “Section 1608 precludes this method”. (See Vienna Convention on Diplomatic Relations, art 22, § 1, US Treaties & Other Int Agreements 3227, 3237, TIAS 7502.)
The Mission has proceeded expeditiously to vacate the judgment here, for petitioner completely failed to provide the proper notice of default judgment. The FSIA requires service of that notice in the same manner as service of the petition. (US Code, tit 28, § 1608, subd [e].)
*949 Respondent has certainly established excusable neglect. It has also raised a meritorious defense.
II
SOVEREIGN IMMUNITY
The Mission asserts that the proceeding is barred by the doctrine of sovereign immunity.
Prior to the.FSIA, decision concerning the immunity of foreign governments from the jurisdiction of the courts of the United States was decided on a case-by-case basis at the State Department’s “suggestion”. (See, e.g., Schooner Exch. v M’Faddon, 7 Crunch [11 US] 116; Matter of Peru, 318 US 578; Mexico v Hoffman, 324 US 30.) The main purpose of the FSIA was to change that procedure, to avoid the approach of the “Tate Letter” (26 Dept of State Bull 984), and to have all sovereign immunity questions resolved by the courts under a uniform set of rules. (US Code Cong & Admin News, 1976, vol 5, p 6607.)
The application of the FSIA standard of immunity to the facts here is simple. The basic rule under the FSIA is that “a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.” (US Code, tit 28, § 1604.) Despite the phrasing of the rule, the burden remains on the foreign State to plead and, ultimately, to prove that it is immune. (US Code Cong & Admin News, 1976, vol 5, p 6616; Rhee v Dahan, 116 Misc 2d 548, 550 [App Term, 1st Dept]; Cocron v Cocron, 84 Misc 2d 335, 338-340.) Here, that immunity cannot be established by the Mission.
The FSIA (US Code, tit 28, § 1605) provides, in pertinent part:'
“(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case * * *
“(4) in which rights in property in the United States acquired by succession or gift or rights in immovable property situated in the United States are in issue”.
That paragraph used the term “immovable property” in the civil law sense to denote real property, and “denies immunity in litigation relating to rights in real estate * * * *950 in the United States.” (US Code Cong & Admin News, 1976, vol 5, p 6618.) The concept that real estate litigation is not subject to immunity was spelled out by the State Department in the 1952 “Tate Letter” (26 Dept of State Bull 984). (Rhee v Dahan, supra; cf. Agostini v De Antueno, 199 Misc 191, 194.) The result here is thus the same as in Rhee v Dahan (supra), even though here the tenant on the lease is the Mission and there the tenant was an individual diplomat. In Rhee, of course the court did not have to deal with the “foreign state” nature of the tenant.
The conclusion that this proceeding is not barred by sovereign immunity does not end the inquiry, for it raises the separate question of whether execution on the warrant of eviction is barred. As to that question, the law is far from clear. The FSIA bars executions on property of a foreign State unless specifically authorized. (US Code, tit 28, § 1609.) The relevant provision (US Code, tit 28, § 1610, subd [a]) permits executions if
“(4) the execution relates to a judgment establishing rights in property * * *
“(B) which is immovable and situated in the United States: Provided, That such property is not used for purposes of maintaining a diplomatic or consular mission or the residence of the Chief of such mission”.
Thus, generally, property judgments are enforceable. The problem here, however, is that the proviso does not make it clear whether the premises at issue are so much a part of the Mission as to bar execution. The language of section 1610 (subd [a], par [4], cl [B]) seems to refer to the same limited property as does section 3 of article 22 of the 1961 Vienna Convention on Diplomatic Relations (23 US Treaties & Other Int Agreements 3227, 3238, TIAS 7502), to which the United States is a party: the “premises of the mission, their furnishings and other property thereon * * * shall be immune from search, requisition, attachment or execution.” However, the House Report (US Code Cong & Admin News, 1976, vol 5, p 6628) seems to take a more expansive view; “embassies and related buildings” are treated as immune from execution both under clause (B) of paragraph (4) and the provisions relating to “commercial activities”. The House Report (US Code Cong & Admin *951 News, id., p 6619) when discussing immunity, notes: “a foreign state cannot deny to the local state the right to adjudicate questions of ownership, rent, servitudes, and similar matters, as long as the foreign state’s possession of the premises is not disturbed.” (Emphasis added; see, also, Gray v Permanent Mission of People’s Republic of Congo, 443 F Supp 816, 822, n 6, supra.)
It appears therefore that the Mission’s u'se of the premises would have to be developed further at a trial in order to determine whether the judgment could be enforced.
III
PRIMARY RESIDENCE
The petitioner brought this proceeding on the theory that the premises are not the Mission’s primary place of residence. The Mission contends that the issue is not properly before the court but belongs before the CAB and filed a protest there. The CAB, however, has continually taken the position that the Omnibus Housing Law of 1983 (L 1983, ch 403) deprived it of any jurisdiction to proceed on primary residence cases. (See, e.g., Plaza Realty Investors, opn No. 27,845; 333 Lausanne Realty Co., opn No. 27,906.) This position is based on section 55 of that law, which was effective July 1, 1983 and which amended section 5 (subd [a], par [11]) of the Emergency Tenant Protection Act of 1974 (ETPA), by adding a provision that primary residence be determined by the court in a proceeding in which the tenant has been given 30 days’ notice of intention to commence the proceeding.
The Mission raises a serious question, going to the merits of this case, whether this court has jurisdiction to determine the primary residence question. Without doubt, section 55 of the Omnibus Housing Law was effective and deleted the “coverage” provisions of the ETPA. However, the Rent Stabilization Law (Administrative Code of City of New York, § YY51-1.0 et seq.) has not been amended in conformity. Section 41 of the Omnibus Housing Law amends section YY51-3.0 (subd a, par [1], cl [f]) of the Administrative Code effective April 1,1984. Thus the Rent Stabilization Law does not provide at this time for court-ordered determinations. The conflict between sections 55 *952 and 41 leads the court to conclude that the April 1 date was probably intended. Section 42 affecting the Rent Control Law (Administrative Code, § Y51-3.0, subd e, par 2, cl [i], subd [10]) is effective April 1, 1984. The effective date section (L 1983, ch 403, § 64) clearly was designed to allow for an orderly transfer of functions under the various sections of the law. The April date would have allowed the appropriate “gearing down” of the CAB adjudicatory process rather than the abrupt end which has ensued. Thus, although counsel in the landlord-tenant field and this court have assumed that the transfer of functions occurred in July, respondent has reasonably argued that they are in error.
IV
CONCLUSION
The court finds that the warrant must be vacated and the judgment and proceeding dismissed in view of the showing made here.
This court’s ruling as to the application of the FSIA does not preclude summary proceedings against the multitude of Missions to the United Nations which rent property in New York City. Properly drafted leases may contain provisions for service of process which are sufficiently specific to comply with the FSIA. The foreign relations aspects of the presence of so many missions requires scrupulous attention to the details of the Federal law. Counsel for private interests may not proceed without authority in cases involving foreign sovereigns without taking care to see that the Federal requirements are strictly followed. Failure to do so, as here, precludes resort to litigation. Of course, “summary” proceedings are not possible if foreign missions or embassies are involved since the FSIA requires 60 days’ notice of any proceeding. (US Code, tit 28, § 1608, subd [d].) Thus counsel should draft their documents, particularly leases, with the delay in enforcement in mind.