Frank J. LUCCHINO, Controller of Allegheny County

v.

FOREIGN COUNTRIES OF BRAZIL, SOUTH KOREA, SPAIN, MEXICO, AND ARGENTINA.

Civ. A. No. 84–2392.

United States District Court, E.D. Pennsylvania.

Jan. 7, 1986.

See also 82 Pa.Cmwlth. 406, 476 A.2d 1369.

Doris A. Smith and Louis S. Gold, Asst. Solicitors, Allegheny County Office of Controller, Pittsburgh, Pa., for plaintiff.

Jose Luis Enciso Rodriquez, Counsel General of Mexico, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

On January 4, 1984, petitioner Frank J. Lucchino, Controller of Allegheny County, filed in the Pennsylvania Commonwealth Court a petition for determination of discrimination under the Pennsylvania Trade Practices Act, Pa.Stat.Ann. tit. 71, §§ 773.-101–773.113 (Purdon Supp.1984–85). The act makes it unlawful for any Pennsylvania agency to specify, purchase or permit to be used in any public works aluminum or steel products made in a foreign country determined by the court to be discriminating against Pennsylvania steel or aluminum. *Id.* § 773.103. Named as respondents were the foreign countries of Brazil, South Korea, Spain, Mexico, and Argentina. Mexico, the only respondent to appear before the commonwealth court, claimed that the court lacked jurisdiction over it because of the protection afforded by both the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1391(f), 1441(d) & 1602–1611, and

the Act of State Doctrine. On April 17, 1984, the commonwealth court rejected Mexico's contentions, found respondent nations to be discriminating against Pennsylvania aluminum and steel products, and ordered the prothonotary of the commonwealth court to place on the foreign registry docket the name of the respondent countries and the specific products of each country whose purchase would be forbidden. *See Lucchino v. Foreign Countries of Brazil, South Korea, Spain, Mexico, and Argentina,* 82 Pa.Cmwlth. 406, 476 A.2d 1369 (1984).

On May 16, 1984, Mexico petitioned to remove the matter to this court pursuant to section 6 of the Foreign Sovereign Immunities Act, 28 U.S.C. § 1441. Presently before the court is the motion of Frank J. Lucchino to remand the matter to the commonwealth court and the motion of Mexico to dismiss for insufficiency of service. For reasons that follow, Lucchino's motion will be denied and Mexico's motion will be granted in part.

■ As a predicate to Mexico's argument against remand and in favor of dismissal, I must find that the Foreign Sovereign Immunities Act, Pub.L. No. 94–583, 90 Stat. 2891 (codified in scattered sections of 28 U.S.C.) applies to a petition for determination of discrimination brought under the Pennsylvania Trade Practices Act. Lucchino argues that the Foreign Sovereign Immunities Act was intended to primarily cover ordinary legal actions in which a plaintiff seeks damages and not actions such as the one brought against Mexico in this case.

The FSIA was enacted to provide a comprehensive explanation of when and how a party can maintain a lawsuit against a foreign state in a court within the United States and to codify principles for courts to apply in deciding questions of sovereign immunity. *See* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.

Code Cong. & Ad.News 6604, 6604; *Velidor v. L/P/G Benghazi,* 653 F.2d 812, 816–17 (3d Cir.1981) *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982). The legislative history observes that American citizens increasingly are coming into contact with foreign states and suggests that these contacts raise questions of whether this country's citizens will have access to the courts in order to resolve "ordinary legal disputes." *Id.* at 6, 1976 U.S.Code Cong. & Ad.News at 6605.

The congressional concern over the availability of U.S. courts to private citizens bringing ordinary damages cases against foreign states does not exhaust the scope of the Act, however. The House Report stresses the lack of *"comprehensive provisions"* informing parties when they can have recourse to the courts to assert a claim against a foreign state. It continues by emphasizing that two of the Act's objectives were to codify the "restrictive principle"[1] of sovereign immunity and, "to insure that this restrictive principle of immunity is applied in litigation before U.S. Courts." *Id.*

Prior to the enactment of the FSIA, when a foreign government wished to assert immunity it could request the State Department to make a formal suggestion of immunity to the court. H.R.Rep. No. 94–1487, at 7, 1976 U.S.Code Cong. & Ad.News, 6604, 6606. Although the State Department attempted to apply sovereign-immunity principles neutrally, it was often subject to diplomatic pressures to extend the doctrine in particular cases. *See id.* One of the primary goals of the FSIA was to divest from the State Department the power to make immunity decisions and to transfer that power to the courts, which would be free from diplomatic pressure. *See id.*

With the immunity issue withdrawn from the executive branch the only vehicle by which a foreign government may assert

---

1. Under the "restrictive principle" of sovereign immunity, the immunity of a foreign state is restricted to suits involving a foreign state's public acts and does not extend to suits based on its

commercial or private acts. H.R.Rep. No. 94–1487, at 7, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6605.

sovereign immunity is through the FSIA. Accordingly, the FSIA should be read to encompass all matters before federal and state courts where a foreign government asserts a claim of immunity. This conclusion is buttressed by the house report which states that the proposed act both "sets forth the sole and exclusive standards to be used in resolving questions of sovereign immunity raised by foreign states before Federal and State courts in the United States ...," *id.* at 12, 1976 U.S.Code Cong. & Ad.News at 6610, and "prescribes ... the procedures for commencing a lawsuit against foreign states in both Federal and State courts." *Id.* In the face of this legislative background, I conclude that the FSIA applies to a petition for determination of discrimination under the Pennsylvania Act.

Having determined that the FSIA should not be read as narrowly as plaintiff urges, I must next consider whether the requirements of the Act's removal provisions have been satisfied.

■ In order for an action against a foreign government to be eligible for removal pursuant to this section, it must be a "civil action brought in a state court...." *See* Foreign Sovereign Immunities Act § 6, 28 U.S.C. § 1441(d). Because the statute does not authorize the interruption of state administrative proceedings, the removal court must determine whether the state body from which the case was dislodged is judicial or administrative in character. *See* 14A C. Wright, A. Miller & F. Cooper, *Federal Practice and Procedure* § 3721, at 205–06 (2d ed. 1985). If the proceeding is found to be judicial, it will be eligible for removal: conversely, if the proceeding is found to be administrative, removal is unavailable.

In *Upshur County v. Rich,* 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196 (1890), the Supreme Court held that a West Virginia "county court," which was charged with the responsibility of reviewing tax assessments, was not a body from which a matter could be removed. The Court observed that the mere fact that a particular body is

labeled as a court does not end the inquiry: rather, a functional analysis must be undertaken to determine the nature of the state proceeding. *Id.* at 470–71, 10 S.Ct. at 652. *See also Commissioners of Road Improvement District No. 2 v. St. Louis Southwestern Ry. Co.,* 257 U.S. 547, 42 S.Ct. 250, 66 L.Ed. 364 (1922).

Under this functional analysis, a court must focus on the procedures and enforcement powers of the state body, the respective state and federal interests in both the subject matter and the provision of a forum, and the traditional locus of jurisdiction over similar matters. *Volkswagen de Puerto Rico, Inc. v. Puerto Rico Labor Relations Board,* 454 F.2d 38, 44 (1st Cir. 1972). *See also Floeter v. C.W. Transport, Inc.,* 597 F.2d 1100, 1102 (7th Cir.1979); *In re Registration of Edudata Corp.,* 599 F.Supp. 1089, 1090 (D.Minn.1984); *Martin v. Schwerman Trucking Co.,* 446 F.Supp. 1130 (E.D.Wis.1978).

■ When all the factors are considered, I must conclude that a petition for determination of discrimination is a civil action brought in a state court. First, a review of the commonwealth court's general jurisdictional grants reveals that the court's powers are unquestionably judicial in nature. The court has original jurisdiction over certain civil actions brought by or against the Commonwealth of Pennsylvania. *See* 42 Pa.Cons.Stat.Ann. § 761 (Purdon Supp. 1985). It has jurisdiction over certain appeals from final orders of the courts of common pleas, *id.* § 762, final decisions of government agencies, *id.* § 763, and awards of arbitrators. *Id.* 763. To aid both its original and appellate jurisdiction, the court has been given the power to issue writs and processes. *Id.* § 562. Furthermore, the commonwealth court is bound to follow Pennsylvania's rules of civil procedure and rules of evidence. *See* Pa. Const., art. V, § 10(c); Pa.R.App.P. 103; Pa.R. Civ.P. 51.

The commonwealth court also sits as a judicial body when it presides over a petition for determination of discrimination. The procedure is adversarial in nature and

may be initiated by someone outside the Pennsylvania government. Petitions may be filed with the court by a public agency, importer, or Pennsylvania taxpayer, must be served upon certain representatives of the allegedly discriminating foreign nation, and, like a complaint, must specifically set forth the alleged discrimination. *See* Pa. Stat.Ann. tit. 71, § 773.106(a) (Purdon Supp.1985). The foreign nation is permitted to respond to the allegations of discrimination by presenting testimony. *Id.* § 773.106(b). In reaching a decision as to whether a foreign country discriminates against Pennsylvania steel or aluminum products the court is directed to employ a decidedly judicial function, i.e., to evaluate evidence against a statutorily-designed definition of discrimination. *See id.* § 773.102; 773.107.

While Pennsylvania has an interest in regulating the products that are to be used in public-agency projects, far stronger federal interests are implicated in this case. First, through the FSIA, Congress has expressed a strong preference for allowing defendant foreign nations to remove cases to federal court. *See generally* H.R.Rep. No. 94–1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604. Second, because the Pennsylvania Act regulates international trade and commerce, it places itself within an area of particular federal concern. *See e.g.,* 19 U.S.C. 1671d (empowering the U.S. International Trade Commission to determine whether there is a material injury to a domestic industry by reason of imports of certain merchandise).

The final factor, the traditional locus of this type of power, may well mitigate in favor of a conclusion that a petition for determination of discrimination is administrative in nature because public-appropriations issues are generally handled by executive or legislative branches of government as opposed to the judicial branch. None-

theless, since there is a strong federal interest in finding this procedure to be judicial and Pennsylvania has fashioned the procedure as judicial and delegated it to a judicial body, I conclude that a petition for determination of discrimination is judicial in character and hence is eligible for removal under section 1441(d).

■ Lucchino next argues that Mexico's removal petition was not timely filed, and therefore, the case must be remanded. Under 28 U.S.C. § 1441(d), the petition for removal may be filed within the time limits imposed by 28 U.S.C. § 1446. However, these limits "may be enlarged for cause shown." 28 U.S.C. § 1441(d). In cases such as this where a defendant is required to be provided a copy of the initial pleading, section 1446 mandates that the removal petition be filed within 30 days after defendant was served.

On January 6, 1984, the Mexican Embassy in Washington, D.C. received a copy of Lucchino's initial pleading. Mexico's removal petition was filed on May 16, 1984. Consequently, in order to avoid remand to the commonwealth court, Mexico must show cause for its delay in filing the petition.

Mexico asserts that Lucchino's failure to make service in accordance with the provision of the FSIA, 28 U.S.C. § 1608(a), provides it with good cause for the delay. Section 1608 offers the exclusive means by which a party in a court of the United States or a state may serve process upon a foreign state. In the absence of either a special arrangement between the plaintiff and the foreign state or an applicable international convention on service of judicial documents, service may only be made by sending to specified individuals a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state.[2]

---

2. The statute also describes the party who should be the recipient of service on behalf of a foreign nation. If service cannot be made within 30 days, two copies are to be directed to the Secretary of State in Washington, District of

Columbia, to the attention of the Director of Consular Services. *See* 28 U.S.C. § 1608(a)(4) (1982). In other cases, service must be addressed to the head of the ministry of foreign

826

The section defines "notice of suit" to mean a notice addressed to a foreign state in a form prescribed by the Secretary of State by regulation. Under 22 C.F.R. § 93.2 (1984), the following information must be contained in a notice of suit:

NOTICE OF SUIT (OR OF DEFAULT JUDGMENT)

1. Title of legal proceeding; full name of court; case or docket number.
2. Name of foreign state (or political subdivision concerned):
3. Identity of other Parties:

JUDICIAL DOCUMENTS

4. Nature of documents served (e.g., Summons and Complaint; Default Judgment):
5. Nature and purpose of the proceedings; why the foreign state (or political subdivison) has been named; relief requested:
6. Date of default judgment (if any):
7. A response to a "Summons and Complaint" is required to be submitted to the court, not later than 60 days after these documents are received. The response may present jurisdictional defenses (including defenses relating to state immunity).
8. The failure to submit a timely response with the court can result in a Default Judgment and a request for execution to satisfy the judgment. If a default has been entered, a procedure may be available to vacate or open that judgment.
9. Questions relating to state immunity and to the jurisdiction of the United States courts are governed by the Foreign Sovereign Immunities Act of 1976, which appears in sections 1330, 1391(f), 1441(d) and 1602 through 1611, of Title 28, United States Code....

Not only must the notice alert the foreign nation of the Act, but it must also be accompanied by the text of the Act. 22 C.F.R. § 93.2(e) (1984).

affairs of the foreign state concerned. *Id.*

Mexico asserts that by failing to serve the statutorily-mandated arm of its government and by neglecting to include a federal notice of suit with the initial pleading, Lucchino failed to apprise Mexico of the right to remove a case to federal court, and that this provides it with good cause to enlarge the time limitations for removal. In *Gray v. Permanent Mission*, 443 F.Supp. 816 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir. 1978), the district court was faced with a similar argument. There, plaintiff on January 25, 1977, commenced in state court a mortgage-foreclosure action against the Congo Mission by serving a summons and complaint on defendant's "secretary." On May 2, 1977, after defendant failed to answer the complaint, the court entered judgment by default. A foreclosure sale of defendant's premises was held on July 1, 1977, with a deed passing to plaintiff on July 5, 1977. On July 25, 1977, after plaintiff moved for a writ of assistance seeking to have the mission evicted, counsel entered his appearance for the mission and petitioned to remove the case to federal court.

Plaintiff in *Gray* argued that the petition, which was filed some six months after service of the complaint, was untimely and that he was entitled to a remand, stating that his counsel on more than 30 occasions had advised the ambassador of the mission's rights, duties, and obligations. The court rejected plaintiff's contention, concluding that the procedures employed by plaintiff had done violence "to the congressional concern for the difficulies inherent in cross-cultural and cross-lingual litigation which is apparent on the face of the service provisions of the Immunities Act ...," and that notification outside the applicable statute could not be substituted for the statute's provisions. *Id.* at 821. Accordingly, the court found that defendant had shown just cause for enlargement. *Id.*

In this case, it is uncontroverted that Lucchino failed to serve in accordance with the Act. First, the documents were sent to the Mexican Consulate in Philadelphia and

§ 1608(a)(3).

the Mexican Embassy in Washington, rather than to the head of the Mexican ministry of foreign affairs or to the Secretary of State in Washington, D.C. Legislative history makes clear that service by mail on an embassy is precluded under the Act. *See* H.Rep. No. 94–1487, 94th Cong., 2d Sess. 24–25, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6623. *See also 40 D 6262 Realty Corp. v. United Arab Emirates Government*, 447 F.Supp. 710, 712 (S.D.N.Y.1978).

Second, the documents were not translated into the Spanish language, thus implicating Congress' concern about the difficulties of cross-lingual litigation.

In summary, the documents were sent to an arm of government that Congress has specifically rejected as an entity suited to processing information pertaining to lawsuits; the documents failed to contain the required notice of suit which would have provided information explaining the nature of this litigation and the right to remove; and that information which Mexico did receive was printed only in English. Denying the requested enlargement of time under these circumstances would certainly defeat Congress' intent in enacting the FSIA. Consequently, I conclude that Mexico has demonstrated sufficient cause to allow for this enlargement of time.

■ Mexico has moved to dismiss the case for lack of personal jurisdiction. The Third Circuit has stated that under the FSIA, "Personal jurisdiction over the sovereign exists when the minimum contacts and requirements for service set forth in §§ 1605–08 are satisfied. To summarize this scheme, subject matter jurisdiction plus service equals personal jurisdiction...." *Velidor v. L/P/G Benghazi*, 653 F.2d 812, 817 (3d Cir.1981), *cert. dismissed*, 415 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982). It is within the power of this court to examine the sufficiency of service in the state court, and upon a finding of insufficient service, to dismiss the

case. *See Gray*, 443 F.Supp. at 821. *See also Mechanical Appliance Co. v. Castleman*, 215 U.S. 437, 30 S.Ct. 125, 54 L.Ed. 272 (1910); *Walker v. Savell*, 335 F.2d 536 (5th Cir.1964).

■ I have already concluded that service did not conform to the requirements of 28 U.S.C. § 1608(a), and was therefore insufficient. Consequently, the commonwealth court was without jurisdiction, and its final judgment is void. *See Gray*, 443 F.Supp. at 821–22. Accordingly, as matters now stand, the judgment against Mexico entered by the commonwealth court on April 17, 1984, must be vacated and the action dismissed.

This dismissal will be stayed 20 days from entry of the accompanying order, however, to allow plaintiff the opportunity to make proper service. If proof of proper service is not provided within this time period, the action will be dismissed. If proof of proper service is provided, the action will proceed.[3] *See* 28 U.S.C. § 1448, *40 D 6262 Realty Corp.*, 447 F.Supp. at 712.

---

**3.** In the event Lucchino elects to serve respondents again, they will be required to engage counsel to represent them in accordance with Rules 11 and 13 of the Local Rules of Civil Procedure.