**Dierdre M. SHERER, Administratrix of the Estate of David W. Sherer, Deceased, Plaintiff–Appellant,**

v.

**CONSTRUCCIONES AERONAUTICAS, S.A., a Foreign Corporation, Defendant–Appellee.**

No. 91–4190.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 24, 1992.

Decided March 2, 1993.

Robert A. Marcis (argued and briefed), Spangenberg, Shibley, Traci, Lancione & Liber, Cleveland, OH, for plaintiff-appellant.

John P. Witri, Baker & Hostetler, Cleveland, OH, Stephen R. Stegich (argued and briefed), Peter F. Tamigi, Condon & Forsyth, New York City, for defendant-appellee.

Before: JONES and SILER, Circuit Judges; and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

This action arises from a plane crash in March 1987 in which Appellant Dierdre Sherer's decedent was killed. Construcciones Aeronauticas, S.A. (CASA), the manufacturer of the plane, is a Spanish corporation which is largely owned by the Spanish government. As such, it is an "agency or instrumentality of a foreign state" for purposes of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1608. Under the FSIA, unless there is a special agreement between the parties, an authorized agent in the United States, or an applicable international convention, the plaintiff must arrange for the clerk of court to send a copy of the summons and complaint "together with a translation of each into the official language of the foreign state" .to the foreign defendant. 28 U.S.C. § 1608(b)(3).

On March 6, 1989, Sherer filed suit against CASA in state court. CASA was served with the summons and complaint via registered mail without a Spanish translation. On May 1, 1989, CASA removed the action to federal court. On May 3, 1989, CASA filed its answer asserting twenty-one affirmative defenses including lack of personal jurisdiction and improper service. The answer was in English and was prepared by attorneys in the United States. Attorneys for CASA attended status calls and engaged in motions practice and discovery. Sherer apparently encountered difficulty in complying with the district court's order regarding disclosure of the identity of her experts and a written report by the experts. On August 17, 1990, Sherer produced her report. Thereafter Sherer dismissed several parties without prejudice. CASA was dismissed on December 11, 1990.

On March 27, 1991, Sherer filed a motion for leave to amend her complaint to recommence her action against CASA. After a hearing on April 8, the district court granted the motion and the amended complaint was filed the next day. The summons and amended complaint were sent to CASA without a Spanish translation. CASA responded with a motion to dismiss for improper service because a Spanish translation did not accompany the summons and complaint. Sherer opposed the motion arguing, inter alia, that she had "substantially complied" with FSIA's service requirements and that CASA had waived its objection to improper service because of its earlier participation in the case.

On October 29, 1991, the district court granted CASA's motion to dismiss. The court reasoned that because CASA had been dismissed earlier and promptly raised its objection to the amended complaint, CASA's objection was entitled to consideration "without regard to the history that preceded it." Mem.Op. at p. 6. The district court also rejected the reasoning of decisions which had denied motions to dismiss on the basis of substantial compliance with the FSIA and adopted the position that strict compliance with the service provisions of the FSIA was required. Pursu-

ant to Sherer's FRCP 54(b) motion, the district court entered final judgment for CASA. This appeal followed.

## ANALYSIS

It is well established that in cases involving improper service, courts have broad discretion to dismiss the action. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1354 at 288 (2d ed. 1987). Thus we review this case under an abuse of discretion standard. We note that:

'Abuse of discretion' is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.

*Balani v. Immigration & Naturalization Service,* 669 F.2d 1157 (6th Cir.1982) (citations omitted).

With regard to the waiver issue, CASA's actions in the first suit are irrelevant because a voluntary dismissal without prejudice leaves the situation as if the action had never been filed. *Hall v. Kroger Baking Co.,* 520 F.2d 1204, 1205 (6th Cir.1975); *Kington v. United States,* 396 F.2d 9, 10 (6th Cir.), *cert. denied,* 393 U.S. 960, 89 S.Ct. 396, 21 L.Ed.2d 373 (1968); *Bomer v. Ribicoff,* 304 F.2d 427 (6th Cir.1962); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 at 186 (2d ed. 1987). CASA's motion to dismiss the amended complaint for improper service was timely filed. Thus, we agree with the district court that CASA has not waived any objection with regard to service of the amended complaint.

Whether Sherer has substantially complied with the service requirements of the FSIA is a more complex issue. As the district court noted, whether the § 1608(b) requirement that a translation accompany the complaint and summons is mandatory is an issue of first impression in this cir-

**1248**

cuit. Some courts that have considered this issue have required strict compliance with the FSIA, while others have found substantial compliance with the FSIA to be sufficient.

The Eleventh Circuit addressed the issue in *Harris Corp. v. National Iranian Radio and Television*, 691 F.2d 1344 (11th Cir.1982) and found service to be sufficient despite noncompliance with FSIA service requirements. The court recognized that Congress had established a flexible framework of acceptable methods of service to assure that foreign defendants will get notice. *Id.* at 1352 n. 16. The court noted that the foreign defendant challenged service only on the grounds of noncompliance with FSIA requirements and did not deny that it had notice of the action. *Id.* at 1352. While the court admonished litigants to follow FSIA service requirements, *id.* at n. 16, it concluded that "[t]he failure to follow precisely those steps in § 1608 designed to insure that actual service be made should not override and invalidate the fact that in this case notice was actually received." *Id.* at 1352.

In *Velidor v. L/P/G Benghazi*, 653 F.2d 812 (3rd Cir.1981), *cert. denied*, 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982), the Third Circuit also concluded that actual notice was more important than strict compliance with the technical requirements of the FSIA. In that case, seaman brought an action against a ship and an instrumentality of Algerian and Libyan governments who owned the ship. The plaintiffs served the ship's master. The issue then was whether the master of a ship is an agent for purposes of receiving process under the FSIA. The court looked to the congressional intent in enacting § 1608 of the FSIA and opined:

> Rather than making service on foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress sought to facilitate the ability of private plaintiffs to serve foreign entities. In addition, Congress wished to insure that the sovereign owner would receive actual notice. H.R.Rep. No. 94–1487 at 23–24.

Since the officers of the company owning the ship received immediate notice of the suit after service on the ship's master, the court concluded that service was sufficient under the FSIA.

The district court in *Banco Metropolitano v. Desarrollo de Autopistas*, 616 F.Supp. 301 (S.D.N.Y.1985), reached a similar conclusion. In that case as in this one, the plaintiff failed to serve a translation on the defendants. The court ruled that because the foreign defendant had actual knowledge of the summons and complaint, substantial compliance with the FSIA had been achieved. *Id.* at 304.

Similarly in *Obenchain Corp. v. Corporation Nacionale de Inversiones*, 656 F.Supp. 435 (W.D.Pa.1987), *aff'd in part and rev'd in part*, 898 F.2d 142 (3rd Cir. 1990), the plaintiff served the complaint rather than having the clerk of courts do it and also failed to include the required notice of suit. The court acknowledged that some courts have required strict compliance with the requirements of the FSIA. However, the court concluded that despite technical omissions where substantial compliance with the FSIA had resulted in actual notice, the purpose of the FSIA was satisfied. *Id.* at 437.

The district court in this case, rejected the "substantial compliance" cases and adopted the "strict compliance" cases, citing *Lippus v. Dahlgren Manufacturing Co.*, 644 F.Supp. 1473 (E.D.N.Y.1986) and *Gray v. Permanent Mission*, 443 F.Supp. 816 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir.1978). In *Lippus*, the plaintiffs failed to supply a translation of the summons and complaint. The court held the service to be defective, noting the difficulties imposed on a defendant who is served with legal documents in a foreign language. *Id.* at 1478–79. However, the court also observed that in enacting § 1608(b)(3), Congress intended the foreign government to be apprised of the pendency of the lawsuit through service "reasonably calculated to give actual notice...." 28 U.S.C. § 1608(b)(3). In light of the defendant's actual notice of the suit and participation in the suit, the court decided that the letter and spirit of the

FSIA would best be served by allowing the plaintiff thirty days in which to perfect service. *Id.* at 1479. The court noted that service defects are readily curable and that such a solution would entail "little tangible prejudice" to the defendant. *Id.*

Other courts have also concluded that strict compliance was necessary, but allowed correction of the defect so that the suit could continue. *See, First City, Texas–Houston, N.A. v. Rafidain Bank,* No. 90 Civ. 7360, 1992 WL 296434, at *1, 1992 U.S.Dist. LEXIS 15235, at *8 (S.D.N.Y. Oct. 6, 1992) (service under FSIA ineffectual, but court gave plaintiff reasonable time to effect service rather than dismiss case); *Lucchino v. Foreign Countries,* 631 F.Supp. 821, 827 (E.D.Pa.1986) (service which did not conform to the FSIA was insufficient, but dismissal was stayed for 20 days to allow plaintiff to make proper service); *Magnus Electronics, Inc. v. Royal Bank,* 620 F.Supp. 387, 389 (N.D.Ill. 1985), *aff'd in part, rev'd in part,* 830 F.2d 1396 (7th Cir.1987) (noncompliance with literal requirements of FSIA deprived court of jurisdiction; service defect was curable, but subject matter jurisdiction was lacking).

In *Gray,* the Congo's permanent mission to the United Nations purchased a building in New York City. When a dispute arose regarding payment, the plaintiff commenced a suit against the Congo Mission by serving a summons and complaint on the defendant's secretary. 443 F.Supp. at 818. The summons and complaint was in English and was not accompanied by a translation. *Id.* at 821. In finding the service to be insufficient, the court noted that "the officials of the Congo Mission did not understand their rights under American law, for they did not employ attorneys nor take any other legal actions until threatened with impending eviction...." *Id.* The court concluded that "[t]he plaintiff's failure to comply with the explicit service requirements of the statute meant that the Congo Mission did not receive the requisite notice of the action against it." *Id.* at 820.

Finally, in *Unidyne Corp. v. Aerolineas Argentinas,* 590 F.Supp. 391 (E.D.Va. 1984), the court concluded that service on the Secretary of the Commonwealth of Virginia as statutory agent for nonresident persons was insufficient service where the foreign instrumentality had had no contacts with the state. In adopting its "strict compliance" position, the court stated that "[i]n light of this strong public policy articulated by Congress to insure adequate notice in litigation against a foreign state, this Court is directed to strictly interpret the requirements set forth in § 1608(b)." *Id.* at 395.

The common theme running through the vast majority of these cases, whether "substantial compliance" or "strict compliance," is the importance of actual notice to the defendants. *Contra, First City, supra,* 1992 WL 296434, at *1, 1992 U.S.Dist. LEXIS 15235, at *5 (that defendant may have been aware of the lawsuit was of little import). The "substantial compliance" cases reason that a technical defect in service should not override the fact that the defendant received actual notice. The "strict compliance" cases assert the proposition that actual notice is best insured by rigid compliance with the literal requirements of the FSIA.

In *Gray,* the plaintiff's failure to serve a translation on the defendants resulted in a lack of actual notice to the Congolese officials as demonstrated by their inaction until they were threatened with eviction. Under such circumstances the purpose of the FSIA is not served and the court properly dismissed the case for insufficient service. Similarly, in *Unidyne, supra,* dismissal of the action was proper where service on the secretary of the Commonwealth of Virginia was not sufficient to insure actual notice to an Argentinean airline where the airline had no contacts with the state. In *Lippus* and *Lucchino, supra,* the courts acknowledged that actual notice had been received and allowed the plaintiff time in which to perfect service. In *Magnus, supra,* the court noted that the service defect was curable, but went on to find that it did not have subject matter jurisdiction in the case. Thus, while requiring strict compliance

with the requirements of the FSIA, where actual notice was received and no other defect existed these courts allowed the cases to go forward on the merits after the improper service was remedied.

Here there can be no doubt that CASA had actual notice of the suit. Even setting aside its participation in the original suit, CASA made a timely motion to dismiss the amended complaint and has not denied that it had actual notice. Furthermore, CASA can show no prejudice resulting from the lack of a translation. CASA is represented by an American law firm and has filed all its responses and reports regarding the accident in English. We recognize the important policy which the translation requirement safeguards. However, in light of CASA's actual notice and lack of prejudice, we are reluctant to allow procedure to triumph over substance. Furthermore, we note that this is an action for wrongful death. As the court in *Banco Metropolitano* stated, "[g]iven the nature of the issues presented and the problems intended to be addressed by the FSIA, strict enforcement of its technicalities here would be inappropriate." 616 F.Supp. at 304. Accordingly, we agree with the court in *Obenchain* which stated:

> [T]he better rule permits the assertion of personal jurisdiction where substantial compliance has effected actual notice. The purpose of the Act's requirements is to ensure actual notice to foreign states of the fact and substance of pending litigation. Where a party has received such notice, despite technical omissions in the manner of service, the purpose of the Act if not its letter has been satisfied.

656 F.Supp. at 437. (Citations omitted).

Thus we conclude that the district court made a clear error in judgment in adopting the "strict compliance" decisions under the circumstances of this case. Accordingly, we reverse the district court's judgment and remand for further action consistent with this decision.

SILER, Circuit Judge, dissenting.

I respectfully dissent from the majority opinion, as I find there was no abuse of discretion on the part of the district court. I would affirm.

As the majority opinion indicates, there is a split of authority on the issue of whether there should be strict compliance or substantial compliance with the Foreign Sovereign Immunities Act, 28 U.S.C. § 1608. However, the statute is clear in its requirements, and makes no provision for a substantial compliance test. In particular, where a party is advised of the requirements of the Act, as the plaintiff was here, and still did not provide a Spanish translation, the district court would be justified in following the authority in *Lippus v. Dahlgren Manufacturing Co.*, 644 F.Supp. 1473 (E.D.N.Y.1986), and *Gray v. Permanent Mission*, 443 F.Supp. 816 (S.D.N.Y.), *aff'd*, 580 F.2d 1044 (2d Cir.1978), without abusing its discretion.