James DOTY, Plaintiff,

v.

MAGNUM RESEARCH, INC., et al., Defendants.

No. 1:96CV2730.

United States District Court, N.D. Ohio, Eastern Division.

Dec. 16, 1997.

Michael R. Kube, William J. Shramek, Jeffries, Kube, Forrest & Monteleone, Cleveland, OH, William E. Pfau, Jr., Pfau, Pfau & Marando, Youngstown, OH, for James Doty, Rebecca Doty.

William E. Pfau, Jr., Pfau, Pfau & Marando, Youngstown, OH, for Magnum Research, Inc.

Mark F. McCarthy, Lois J. Cole, Arter & Hadden, Cleveland, OH, William K. McCarter, Concord, OH, for Israeli Military Industries, Ltd., Vieth Sports Supply.

## MEMORANDUM DECISION

GWIN, District Judge.

### I

On June 19, 1997 Plaintiffs James and Rebecca Doty filed a motion to confirm service of process on Defendant Israeli Military Industries, Ltd. ("IMI") in this products liability action removed from state court by IMI (Doc. 8). On July 21, 1997 IMI filed a motion under Fed.R.Civ.P. 12(b) to dismiss the suit for lack of *in personam* jurisdiction (Doc. 11).

IMI claims that because it was not properly served under the service requirements of Section 1608 of the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.*, the Court lacks personal jurisdiction over IMI. Doty claims service of process was sufficient. For the reasons which follow, the Court grants the Plaintiffs' motion and denies Defendant IMI's Rule 12 motion.

### II

James Doty says he bought a semi-automatic pistol manufactured by IMI which discharged while in the safety position on the day of purchase while the Plaintiff was on the firing range. Plaintiffs filed this lawsuit in Lake County Common Pleas Court against Magnum Research, Inc., (the distributor); Vieth Sports Supply, of Mentor, Ohio (the retail seller); and IMI, an Israeli business (the designer and manufacturer of the firearm). IMI answered the complaint, engaged in discovery, and removed this action from state court to federal court under terms of the FSIA. However, IMI has not waived its affirmative defense of improper service.[1]

Plaintiffs attempted to serve IMI by sending a copy of the summons and complaint to IMI Services U.S.A. in Chevy Chase, Maryland, by certified mail. Plaintiffs contend, but Defendant disputes, that IMI Services should be considered IMI's general agent. Plaintiffs later attempted to serve Prentice Hall Corporation, at a Baltimore, Maryland, address by certified mail. Plaintiffs contend, but the Defendant disputes, that Prentice Hall is Defendant's resident agent.

### III

If a defendant qualifies as a "foreign state," then it must be served according to

---

1. See for example ¶ 6 of Defendant IMI's Notice of Removal wherein IMI states "Defendant IMI did not receive through [sic] proper service pursuant to the provisions of 28 U.S.C. Section 1608 of the FSIA a copy of the Summons and Complaint in this action or copies of Magnum's or Vieth's Cross–Claims against it."

Section 1608(a) of the FSIA. If a defendant qualifies as an "agency or instrumentality of a foreign state," then service of process must meet the requirements of Section 1608(b) of the FSIA.[2] This latter provision provides a preferred hierarchy of choice of methods. An agency or instrumentality of a foreign state should be served by a special arrangement worked out between the parties. If there is no special arrangement, then service should be made to an officer, or to an agent of the defendant. Service under terms of an international convention, such as the Hague Service Convention, is next in order of preference. The Sixth Circuit, rather than requiring strict adherence to service requirements when determining whether proper service was made under the FSIA, follows a "substantial compliance" test. *Sherer v. Construcciones Aeronauticas, S.A.,* 987 F.2d 1246 (6th Cir.), *cert. denied,* 510 U.S. 818, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993). Substantial compliance with the FSIA is met when the agency or instrumentality of a foreign state had actual notice and lack of prejudice. *Id.* at 1250.

When a trial court determines that it can decide a motion to dismiss for lack of personal jurisdiction on written submissions, a plaintiff need only make a prima facie showing that personal jurisdiction exists while considering the pleadings and affidavits in the light most favorable to the plaintiff. *Lyman Steel Corp., et al. v. Ferrostaal Metals Corp., et al.,* 747 F.Supp. 389, 392 (N.D.Ohio 1990). The fundamental inquiry is whether each defendant has minimum contacts with the forum state [Ohio] and whether the exercise of jurisdiction offends "traditional no-

2. Section 1608(b) reads:

Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States: or in accordance with an applicable international convention on service of judicial documents; or

tions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In the Sixth Circuit, there are three criteria that must be met to comport with due process:

First, the defendant must purposely avail himself of the privilege of acting in the forum state or causing a consequence in the foreign state. Second, the cause of action must arise from the defendants' activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Lyman Steel Corp.,* 747 F.Supp. at 394 (citations omitted).

## IV

Though IMI claims that it should be considered a "foreign state" for service of process, the Court finds that the evidence submitted by IMI points clearly to IMI falling within the FSIA's definition of "an agency or instrumentality of a foreign state." That definition is found within Section 1603(b) of the Act and reads in part:

(b) An "agency or instrumentality of a foreign state" means any entity -

(1) which is a separate legal person, corporate or otherwise,, and

(2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state-

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

(C) as directed by order of the court consistent with the law of the place where service is to be made.

(3) which is neither a citizen of a State of the United States ..., nor created under the laws of any third country.

■ Defendant's offer the affidavit of Margalit Nof, IMI's corporate secretary. According to Nof, IMI is a limited liability company organized under Israeli law with its principal place of business in Ramat Hasharon, Israel, and is owned by the government. Nof says IMI manufactures weaponry and is a major arms supplier for the Israeli Defense Forces.

Nof also says that Israel Military Industries Services U.S.A. Inc. is a Delaware corporation owned by IMI with its principal place of business in Chevy Chase, Maryland. He further says that both are separate entities and IMI Services is not the registered agent for purposes of service of process for IMI. Nof also says that to the best of his knowledge both entities maintain completely separate records, books, and accounts. According to Nof, IMI has no registered agent. IMI Services is not involved in the design or testing or manufacturing of any IMI products, he says.

There is no doubt that IMI has received actual notice and IMI has not suffered prejudice from service of process. In fact, IMI was able to remove suit from state to federal court. If the facts stated in the Nof affidavit are true, then service of process on IMI did not strictly follow § 1608(b) of the FSIA. The parties have not agreed to a "special arrangement" for service, service was never made on a bona fide agent, and Plaintiffs did not avail themselves of the procedures available under a treaty, such as the Hague Service Convention. But Plaintiffs have attempted to work out a "special arrangement" with IMI to no avail, they believed that IMI Services was IMI's general agent in this country, and sought to serve another Maryland concern when they discovered Prentice–Hall was resident agent for IMI in this country. Under § 1608(b)(2), the next choice for service of process would be utilization of the provisions of the Hague Service Convention.

The Court finds the Plaintiffs' efforts at service sufficient, and will not require quashing service with leave to perfect within a certain time frame. *See Lyman Steel Corp.,* 747 F.Supp. at 401. In finding service sufficient in this case, the Court notes that § 1608(b)(2) speaks of delivery of a copy of the summons and complaint "to any other agent authorized by ... law to receive service of process in the United States." Further, the Supreme Court of the United States has held that the provisions of the Hague Service Convention are inapplicable when process is served on a foreign corporation by serving its domestic subsidiary which, under state law, is the foreign corporation's involuntary agent for service. *Volkswagenwerk Aktiengesellschaft v. Schlunk,* 486 U.S. 694, 698–708, 108 S.Ct. 2104, 100 L.Ed.2d 722 (1988).[3] Finding IMS and IMS Services so closely related so that, at the very least, IMS Services was an involuntary agent for service of process in this country, the Court will grant Plaintiffs' motion.

■ Since this is a torts action involving an injury to an American citizen seeking monetary damages for a defective product, and does not involve any questions of Israeli arms supplies or other diplomatic considerations, the Court finds that the exercise of jurisdiction over Defendant IMI would not be unreasonable.

The Court finds Plaintiffs have met their burden and made a prima facie showing that specific personal jurisdiction existed, especially since IMI contested on the issue of service of process and not on the issue of minimum contacts with Ohio or the United States. Aside from finding that service was sufficient in this action, the Court notes that IMI purposely availed itself of the forum, at the very least by causing a consequence in Ohio through the sale of one of its firearms. The lawsuit it seeks to avoid in fact arose from IMI's activities in the United States. The consequences of IMI's sale of firearms in this country provides a "substantial enough connection" with Ohio so that it is not unreasonable for the Defendant to defend itself in a products liability action in this Court.

---

**3.** We note that the *Schlunk* case did not involve the Foreign Sovereign Immunities Act.

## V

Based on the above, the Court grants the Plaintiffs' motion to confirm service of process and denies the Defendant IMI's motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.