Nina Schroder **MAGNESS,**
et al., **Plaintiffs,**

v.

**RUSSIAN FEDERATION,**
et al., **Defendants.**

No. Civ.A.97–2498.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 12, 2000.

Lynne Liberato, Alene Ross Levy, Haynes and Boone, L.L.P., Houston, TX, Daniel B. Nelson, Livingston, Nelson & Smitler, Houston, TX, for plaintiffs.

Brendan D. Cook, Verner Liipfert Bernhard McPherson & Hand, Houston, TX, for the Russian Federation, Russian Ministry of Culture, and Russian State Diamond Fund.

Tim Dickinson, Dickinson & Landmeier, L.P., Washington, D.C., for the American–Russian Cultural Cooperation Foundation.

*ORDER*

HITTNER, District Judge.

Pending before the Court is the Motion to Vacate Default Judgment (Document # 41) filed by defendants the Russian Federation, the Russian Ministry of Culture, and the Russian State Diamond Fund. Having considered the motion, submissions, and applicable law the Court determines that the motion to vacate should be denied.

On July 24, 1997, Plaintiffs filed their original complaint against the defendants in this action and against the American–Russian Cultural Cooperation Foundation [1] alleging that the Russian government had appropriated certain property owned by the plaintiffs in the Russian Federation without paying compensation. On July 25, 1997, the Court heard and denied the plaintiffs' request for a temporary restraining order, which would have precluded the Romanov jewels from leaving the United States.

On August 13, 1998 the Court ordered the plaintiffs to serve summons and the complaint on the defendants before September 1, 1998. The plaintiffs served each of the defendants as follows:

*The Russian Federation:* On August 31, 1998, plaintiffs forwarded a copy of the Summons and the Original Complaint, via Federal Express, to the Secretary of State

---

1. The American–Russian Cultural Cooperation Foundation has been dismissed as a defendant in this case by agreement of the parties.

of Texas to be served on Boris Yeltsin, President of the Russian Federation, at the Kremlin, in Moscow and on the Deputy Minister of Culture, through the Secretary of State of Texas;

*Russian Ministry of Culture:* On August 31, 1998, plaintiffs forwarded a copy of the Summons and the Original Complaint, via Federal Express, to the Secretary of State of Texas to be served on the Russian Ministry of Culture;

*Russian State Diamond Fund:* On August 31, 1998, plaintiffs forwarded a copy of the Summons and Original Complaint, via Federal Express, to the Director of Special Consular Affairs at the United States Department of State in Washington, D.C.

In addition, the plaintiffs also forwarded a copy of the Summons and Original Complaint via Federal Express to James Symington, Chairman of the American–Russian Cultural Cooperation Foundation and to Edward A. Betancourt, in his capacity as Director of the Office of Policy Review and Inter–Agency Liaison in the Directorate Overseas Citizens Services of the Bureau of Consulate Affairs, United States Department of State. Finally, the plaintiffs provided copies of the Summons and Original Complaint to Tim Dickerson and Brendan Cook, attorneys for the defendants.

The Foreign Sovereign Immunities Act, 28 U.S.C. § 1608, provides the procedure for service of process on a foreign state or its political subdivisions, agencies, or instrumentalities.

Section 1608(a) provides for the proper procedure for service on a foreign state or political subdivision of a foreign state, *i.e.* the Russian Federation and the Russian Ministry of Culture, as follows:

(1) delivery of the summons and complaint in accordance with any special arrangement that may exist;

(2) delivery of the summons and complaint in accordance with an applicable convention on service of judicial documents;

(3) absent such arrangement or convention, transmittal of a copy of the summons and complaint and a notice of suit, together with translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to the head of the ministry of foreign affairs of the foreign state concerned; or

(4) if service cannot be made within 30 days under the third scenario, by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by a form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services—and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

Section 1608(b) provides the proper procedure for service on a foreign agency or instrumentality, *i.e.* the Russian State Diamond Fund, as follows:

(b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:

(1) a copy of the summons and complaint may be delivered in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

(2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance

with an applicable international convention on service of judicial documents; or

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

(A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request, or

(B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency of instrumentality to be served, or

(C) as directed by order of the court consistent with the place where service is to be made.

The defendants argue that as the plaintiffs have failed to properly comply with the procedural requirements of the Foreign Sovereign Immunities Act, the service on the defendants was defective, rendering the entry of the default judgment in this case void. Specifically, defendants argue that there were no "special arrangements" between plaintiffs and the defendants and no applicable international treaty or convention. Thus, neither sections 1608(a)(1)–(2) nor section 1608(b)(1)–(2) apply.

According to the defendants, the plaintiffs failed to comply with the requirements of the remaining sections, 1608(a)(3) and (a)(4). First, the plaintiffs sent a copy of the Original Complaint and Summons, through the Secretary of State of Texas, to President Yeltsin and the Deputy Minister of Culture. According to the defendants, service by the Secretary of State of Texas on President Yeltsin and the Deputy Minister of Culture, is not service on the Russian Ministry of Foreign Affairs as required by § 1608(a)(3).

Defendants argue that plaintiffs alternatively failed to meet the requirements of § 1608(a)(4). Plaintiffs were informed by the State Department that service under § 1608(a)(4) would not be effected because the plaintiffs had failed to: (1) exhaust the method of service under § 1608(a)(3); (2) make reference in the Summons to the 60 days provided in 28 U.S.C. § 1608(d) within which time the Original Complaint must be answered after service is effected; and (3) forward a Notice of Suit prepared in accordance with 22 C.F.R. § 93.2. Plaintiffs were further informed that "[w]hen these procedural discrepancies have been resolved, the Department of State will forward the request to the U.S. Embassy in Moscow for transmittal of the summons, complaint, and notice of suit to the Ministry of Foreign Affairs."

Defendants also argue that the plaintiffs have not served the Russian State Diamond Fund pursuant to the service requirements of 28 U.S.C. § 1608(b). The plaintiffs were required to serve the Russian State Diamond Fund pursuant to § 1608(b)(3)(A), by forwarding the Summons and Original Complaint through a "letter rogatory or request." Plaintiffs also failed to request the clerk of the Court to dispatch, "by any form of mail requiring a signed receipt," copies of the charging documents to the Russian State Diamond Fund. Nor has the Court ordered service on the Russian State Diamond Fund "consistent with the law of Russia," pursuant to 28 U.S.C. § 1608(b)(3)(B) and (C). According to the defendants, the plaintiffs' failure to strictly comply with the service requirements under § 1608 altogether nullifies this Court's entry of default judgment.

In response, the plaintiffs acknowledge that they have not technically complied with the requirements for service of process on the defendants pursuant to §§ 1608(a) and (b). However, the plaintiffs contend that because the defendants do not dispute that actual notice was received, precise compliance with the statutory requirements of service under the Foreign Sovereign Immunities Act is not required. Rather, provided the plaintiffs "substantially complied" with the Act's requirements, service is satisfied and the default judgment should not be vacated.

Both sides have cited extensive case law to support their respective positions. For example, plaintiffs rely on *Sherer v. Construcciones Aeronauticas, S.A.,* 987 F.2d 1246 (6th Cir.), *cert. denied,* 510 U.S. 818, 114 S.Ct. 72, 126 L.Ed.2d 41 (1993). In *Sherer,* the defendant, a Spanish corporation owned primarily by the Spanish government, was served pursuant to 28 U.S.C. § 1608(b)(3). However, the plaintiff did not send a Spanish translation as required by the Act. The Court found that a technical defect in service "should not override the fact that the defendant received actual notice." *Id.* at 1249. *See also Velidor v. L/P/G Benghazi,* 653 F.2d 812, 821 (3d Cir.1981) ("Rather than making service on foreign instrumentalities a rigid, technical, or cumbersome procedure, Congress sought to facilitate the ability of private plaintiffs to serve foreign entities. In addition, Congress wished to insure that the sovereign owner would receive actual notice."), *cert. dismissed,* 455 U.S. 929, 102 S.Ct. 1297, 71 L.Ed.2d 474 (1982).

The defendants rely on cases which have found that strict compliance with the Foreign Sovereign Immunities Act service requirements is directed by the statute. For example, in *Transaero, Inc. v. La Fuerza Aerea Boliviana,* 30 F.3d 148, 154 (D.C.Cir.1994), *cert. denied,* 513 U.S. 1150, 115 S.Ct. 1101, 130 L.Ed.2d 1068 (1995) the court held that "strict adherence to the terms of 1608(a) is required." The plaintiff in *Transaero* had obtained a default judgment against the Bolivian Air Force. The central question in the case was whether the defendant was an agent or instrumentality of a foreign state or a foreign state or political subdivision. The plaintiff had served the defendant pursuant to the requirements for an agent or instrumentality pursuant to 1608(b). The court found that because the defendant was a foreign state or political subdivision, the technical requirements of 1608(a) should have been satisfied and actual notice provided via 1608(b) was insufficient.

The authorities offered by the plaintiffs and defendants are from circuits other than the Fifth Circuit. While these authorities are persuasive, none are binding on this Court. Rather, it appears that this is a case of first impression in this Circuit. Accordingly, this Court must determine whether substantial compliance and actual notice or whether strict compliance with the Foreign Sovereign Immunities Act apply in this case.

Having considered the authorities and arguments offered by the parties in this case, the Court determines that the defendants received actual notice of the proceedings in this Court, which service substantially complied with the Foreign Sovereign Immunities Act. Despite receiving notice, the defendants elected not to respond to these proceedings until after this Court had entered a default judgment. For the defendants to now insist on technical compliance with the Act would not serve the interests of justice or judicial economy. Accordingly, based on the foregoing, the Court hereby

ORDERS that the Motion to Vacate Default Judgment (Document # 41) is DENIED.